# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CROSSROADS INVESTMENTS, LLC     :
                                       :
                                       :      **Case No. 2:20-cv-02329**
                                       :
              **Plaintiff,**     :
                                         :
   **v.**                                        :
                                         :
PHILADELPHIA INDEMNITY       :
INSURANCE COMPANY,           :
                                         :
              **Defendant.**    :

## MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
## <u>PLAINTIFF'S CLASS ACTION COMPLAINT PURSUANT TO RULE 12(b)(6)</u>

Jeffrey D. Grossman
Stradley Ronon Stevens & Young LLP
2600 One Commerce Square
Philadelphia, PA 19103
Telephone:  215.564.8000
Facsimile:  215.564-8120

Richard L. Fenton (admitted *pro hac vice*)
Dentons US LLP
233 S. Wacker Drive, Suite 5900
Chicago, IL  60606
Telephone:  312.876.8000
Facsimile:  312.876.7934

Jeffrey A. Zachman (admitted *pro hac vice*)
Dentons US LLP
303 Peachtree St., NE Suite 5300
Atlanta, GA  30308
Telephone:  404.527.4000
Facsimile:  404.527.4198

*Attorneys for Defendant,*
*Philadelphia Indemnity Insurance Company*

## TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................1

II.     FACTUAL BACKGROUND ................................................................................4

III.    LEGAL STANDARD ...........................................................................................8

IV.     ARGUMENT ........................................................................................................9

        A.      The Complaint Fails To Meet Rule 8's Pleading Requirements. ...........9

        B.      The Complaint Otherwise Fails To State A Claim Under The Plain Terms
                Of The Policy And Must Be Dismissed Pursuant To Rule 12(b)(6). ..................10

                1.      The Virus Exclusion Applies. ...................................................10

                        a.      Plaintiff's Conclusory Allegation That The Virus Exclusion
                                "Does Not Apply" To Plaintiff's Loss Cannot Be
                                Considered. ..................................................................11

                        b.      Regulatory Estoppel Does Not Bar Application Of The Virus
                                Exclusion.......................................................................11

                        c.      Public Policy Does Not Bar Application Of The Virus
                                Exclusion.......................................................................16

                2.      The Complaint Fails To Assert Facts Establishing A "Direct
                        Physical Loss."...........................................................................16

                3.      The Civil Authority Coverage Does Not Apply Because Plaintiff
                        Has Not Alleged Any Facts Related To That Coverage. ..........18

                4.      Plaintiff Is Not Entitled To A Declaratory Judgment ..............20

                        a.      Plaintiff Has Not Alleged Any Likelihood Of Future Loss
                                And Cannot Maintain A Declaratory Judgment To
                                Determine Liability For A Prior Loss. ..........................20

                        b.      Plaintiff's Declaratory Judgment Claim Would Not Resolve
                                The Dispute Between The Parties And Thus Seeks An
                                Advisory Opinion..........................................................21

V.      CONCLUSION....................................................................................................22

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Andela v. Admin. Office of U.S. Courts,*
  569 F. App'x 80 (3d Cir. 2014) ....................................................................20, 21

*Ashcroft v. Iqbal,*
  129 S.Ct. 1937 (2009) ............................................................................ *passim*

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)...............................................................................8, 9, 11, 18

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007)................................................................................ *passim*

*Bell v. Rothrock,*
  No. 4:18-CV-02177, 2020 WL 1288484 (M.D. Pa. Jan. 30, 2020).....................11, 13, 16, 17

*Butta v. GEICO Cas. Co.,*
  400 F. Supp. 3d 225 (E.D. Pa. 2019) .......................................................................22

*Calderon v. Ashmus,*
  523 U.S. 740, 118 S. Ct. 1694, 140 L. Ed. 2d 970 (1998)............................................4, 21, 22

*Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.,*
  89 F.3d 976 (3d Cir. 1996)..............................................................................12

*Ciser v. Nestle Waters N. Am. Inc.,*
  596 F. App'x 157 (3d Cir. 2015) .........................................................................8

*Corliss v. O'Brien,*
  200 F. App'x 80 (3d Cir. 2006) .......................................................................4, 20

*Davis v. Family Court of Phila.,*
  No. CV 14-6840, 2015 WL 10937416 (E.D. Pa. Feb. 20, 2015)........................................9

*Dickie Brennan & Co. v. Lexington Ins. Co.,*
  636 F.3d 683 (5th Cir. 2011) ............................................................................19

*Hawkins v. Supreme Court of N.J.,*
  174 F. App'x 683 (3d Cir. 2006) .......................................................................20

*Hussey Copper, Ltd. v. Arrowood Indem. Co.,*
  391 F. App'x 207 (3d Cir. 2010) ....................................................................12, 15

*Hussey Copper Ltd. v. Royal Ins. Agency of Am.*,
    No. 07-758, 2009 WL 2913959 (E.D. Pa. Sept. 9, 2009) .......................................................12

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
    998 F.2d 1192 (3d Cir. 1993) .............................................................................................................2

*Port Authority of N.Y. and N.J. v. Affiliated FM Ins. Co.*,
    311 F.3d 226 (3d Cir. 2002) .......................................................................................15, 17, 18

*Pub. Serv. Comm'n of Utah v. Wycoff Co.*,
    344 U.S. 237, 73 S. Ct. 236, 97 L. Ed. 291 (1952) .................................................................21

*Simon Wrecking Co., Inc. v. AIU Ins. Co.*,
    530 F. Supp. 2d 706 (E.D. Pa. 2008) ...............................................................................12, 15

*Spring Garden Assocs., L.P. v. Resolution Tr. Corp.*,
    860 F. Supp. 1070 (E.D. Pa. 1994), *aff'd*, 68 F.3d 457 (3d Cir. 1995) ....................................2

*Sunbeam Corp. v. Liberty Mut. Ins. Co.*,
    566 Pa. 494, 781 A.2d 1189 (2001) ............................................................................................12

*Takeda Pharm. U.S.A., Inc. v. Spireas*,
    400 F. Supp. 3d 185 (E.D. Pa. 2019) .............................................................................12, 15

**Statutes**

28 U.S.C. § 2201 ..............................................................................................................................4

Declaratory Judgment Act ....................................................................................................21, 22

**Other Authorities**

*Black's Law Dictionary* (10th ed. 2014) ....................................................................................10

Fed. R. Civ. P. 8 .................................................................................................................1, 2, 8, 10

Fed. R. Civ. P. 8(a)(2) ......................................................................................................................8

Fed. R. Civ. P. 10(c) .........................................................................................................................2

Fed. R. Civ. P Rule 23 .....................................................................................................................1

Rule 12(b)(6).......................................................................................................................... *passim*

## I.   <u>INTRODUCTION</u>

On behalf of itself and a putative class, Plaintiff seeks coverage under a Commercial Lines insurance policy issued by Defendant, Philadelphia Indemnity Insurance Company ("PIIC") (Policy No. PHPK2074476, the "Policy", Compl. ¶ 12, attached as Exhibit A), providing property insurance coverage for Plaintiff's business premises (the "Covered Property").  (Complaint, ECF No. 1, ¶ 6.)  Specifically, the Complaint alleges that PIIC improperly denied coverage for lost business income, extra expenses, and interruption by civil authority caused by the COVID-19 pandemic and related orders by government officials requiring the closure of non-essential businesses as a precaution to prevent further spread of the disease.  Count I seeks a declaration of rights finding coverage under the Policy, and Count II seeks breach of contract damages and attorney's fees, all on behalf of Plaintiff and the putative class.  Plaintiff's claims fail for multiple reasons.[1]

At the outset, the Complaint does not meet the *Twombly/Iqbal* pleading standard because it does not allege facts sufficient to state a plausible claim for relief under Rule 8, Fed.R.Civ.P. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-51 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-63 (2007).  Plaintiff's Policy requires, among other things, "direct physical loss of or damage to" plaintiffs' business premises, (the "Covered Property") as a prerequisite to Business Income and Extra Expense coverages.  Similarly, a prerequisite to Civil Authority coverage is the issuance of civil authority orders barring access to Plaintiff's premises in response to "direct physical loss or damage" to properties within a mile of Plaintiff's premises.  Although Plaintiff's Complaint sets forth much about the COVID-19 pandemic and resulting emergency orders,

---

[1] Together with this motion, PIIC is also filing an alternative motion to strike Plaintiff's class allegations because Plaintiff cannot meet the commonality, typicality, predominance or superiority requirements of Rule 23, Fed. R. Civ. P, as a matter of law.

Plaintiff's complaint is devoid of any facts establishing any actual physical loss or damage or loss to any business premises anywhere, save for conclusory non-sequiturs asserting that issuance of gubernatorial orders closing businesses generally, or the supposedly "ubiquitous nature" of COVID-19, in some unexplained way constitutes "direct physical loss or damage." (Complaint, ¶¶ 41-44.) Those bald recitals are unsupported by any facts and are not sufficient to "nudge [Plaintiff's"] claims across the line from conceivable to plausible." The Complaint must therefore be dismissed. *Twombly,* 540 U.S. at 555; Fed. R. Civ. P. 8.

The Complaint also fails to state a claim under Rule 12(b)(6) for at least three other reasons. First, Plaintiff's claims are barred by the Policy's clear, unambiguous, and specific exclusion for any "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease" (the "Virus Exclusion"). (*See* Policy at 78 of 167).[2]  Plaintiff unquestionably claims "damage caused by or resulting from" a "virus" that induces "physical distress, illness or disease," and therefore Plaintiff's claims fall squarely within the Virus Exclusion  *Id.*  Plaintiff's conclusory assertion that the Virus Exclusion is "inapplicable" in some unexplained way, (Compl. ¶¶ 46, 47), does not override the express and unambiguous Policy language providing that the Virus Exclusion "applies to all coverage…forms or endorsements that cover business income, extra expense or action of civil authority." (Policy at 78 of 167.)

---

[2] "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."  Fed. R. Civ. P. 10(c); *Spring Garden Assocs., L.P. v. Resolution Tr. Corp.*, 860 F. Supp. 1070, 1072 (E.D. Pa. 1994), *aff'd,* 68 F.3d 457 (3d Cir. 1995) ("A court may consider exhibits attached to a complaint without converting a motion to dismiss into a motion for summary judgment.") (referencing *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

Plaintiff's assertion that the Virus Exclusion should be negated under the doctrine of regulatory estoppel (Compl. ¶¶ 48-55) is similarly misplaced because Plaintiff does not and cannot identify any position taken by PIIC that is inconsistent with any representations made to regulators during the approval of the Virus Exclusion.  The allegations of Plaintiff's complaint show that PIIC's position on coverage here is identical to the positions taken during the regulatory approval process.  Regulatory estoppel is thus inapplicable.

Next, Plaintiff's claims fail because the losses it alleges are not covered by the Policy even in the absence of the Virus Exclusion.  The Business Income and Extra Expense coverages both require that the insured establish "direct physical loss or damage" to the insured premises.  To establish direct physical loss or damage under applicable law, Plaintiff must show that the property suffered demonstrable, physical alteration.  The Complaint, however, fails to set forth any facts demonstrating that Plaintiff's business premises suffered any physical alteration, impairment or damage.  Although the Complaint repeatedly parrots the phrase "direct physical loss," it does not specify the nature of any physical loss or damage, nor does it explain how the spread of an infectious disease throughout the United States would result in tangible physical loss or damage to Plaintiff's business premises.  Similarly, Civil Authority Coverage requires that access to Plaintiff's premises be prohibited by civil authorities in response to dangerous physical conditions as a result of "direct physical loss of or damage to" other properties within a mile of Plaintiff's insured premises.  (*See* Policy at 68 of 167.)  The Complaint contains no allegations establishing "direct physical loss of or damage to" any nearby structures.  Moreover, the governmental orders closing businesses to the public generally were in response to the pandemic and to control further spread of the disease, not in response to any physical damage to property.  So, Plaintiff's claims fail as a matter of law.

Finally, Plaintiff has established no basis on which to obtain declaratory relief. The Complaint seeks a declaration of legal rights based on abstract assertions that Plaintiff suffered unspecified physical loss or damage at some time *in the past*. But "[d]eclaratory judgment is inappropriate solely to adjudicate past conduct…Nor is declaratory judgment meant simply to proclaim that one party is liable to another." *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006). For that reason alone, Plaintiff's claim for declaratory judgment is barred. Declaratory relief also is inappropriate because the declaration of "coverage" Plaintiff seeks would not resolve the dispute between the parties. Any such declaration would still require further proceedings to determine the precise losses that are covered under the Policy and the amounts, if any, that are due and owing. *See Calderon v. Ashmus*, 523 U.S. 740, 748, 118 S. Ct. 1694, 1699, 140 L. Ed. 2d 970 (1998) (plaintiff cannot "seek[ ] by declaratory judgment to litigate a single issue in a dispute that must await another lawsuit for complete resolution."). Accordingly, and the other insufficiencies in the Complaint notwithstanding, Count I for declaratory relief should be denied under 28 U.S.C. § 2201.

In sum, and sympathetic though Plaintiff's circumstances may be, the allegations of the Complaint simply do not establish a plausible basis for relief in the face of the clear and unambiguous provisions of the Policy. Accordingly, the Complaint fails to state a claim and should be dismissed in its entirety.

## II.     FACTUAL BACKGROUND

Plaintiff operates a daycare center in Warrington, Pennsylvania. (Compl. ¶ 6.) Plaintiff commenced this action on May 18, 2020, on behalf of itself and a putative class of insureds.[3]

---

[3] Plaintiff defines the potential class as:

> All policyholders in the United States who purchased commercial property coverage, including business or interruption income (and extra expense) coverage

(Compl. ¶¶ 1 and 5.)  Plaintiff seeks coverage under a Commercial Lines policy providing property coverage for Plaintiff's business located at 832 Easton Road, Warrington, Pennsylvania.  (*See* Policy, Compl., Exhibit A.)   The Policy period extends from December 16, 2019 through December 16, 2020.  (*Id*. at 10 of 167.)

The Policy includes coverage for certain lost business income ("Business Income Coverage") if Plaintiff's operations are suspended as a result of "direct physical loss of or damage to" the insured premises.  It provides that PIIC:

> will pay for the actual loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration'.[4] **The 'suspension' must be caused by direct physical loss of or damage to property at premises which are described in the Declarations** and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a **Covered Cause of Loss**.

(Policy at 67 of 167 (emphasis added).)

Similarly, the Policy provides coverage for "Extra Expenses" incurred as a result of a direct physical loss ("Extra Expense Coverage") and defines "Extra Expense" as follows:

> Extra Expense means necessary expenses you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a **Covered Cause of Loss**.

---

from Defendant and who have been denied coverage under their policy for lost business income after being ordered by a governmental entity, in response to the COVID-19 pandemic, to shut down or otherwise curtail or limit in any way their business operations.

(Compl. ¶ 58.)

[4] "Period of Restoration" is defined in the Policy as the period of time that begins 72 hours after the time of the direct physical loss or damage for Business Income Coverage, or immediately after the time of direct physical loss or damage for Extra Expense Coverage, and that ends when the property reasonably should have been repaired or restored, or when permanent operations commence at a different location, whichever comes first. (Policy at 75 of 167.)

(*Id.* at 67 of 167.)  As Plaintiff alleges and as set forth above, "Covered Causes of Loss" are defined as risks of "direct *physical loss"* unless otherwise excluded or limited under the Policy.  (Compl. ¶ 17, emphasis added.)[5]

Plaintiff also relies on a portion of the Policy that provides additional coverage related to the action of a civil authority ("Civil Authority Coverage") (*see* Compl. ¶ 23).  That language provides:

> **When a Covered Cause of Loss causes damage to property other than property at the described premises**, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> (2) The action of civil authority is taken in response to **dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage**, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(Policy at 68 of 167 (emphasis added).)

Thus, both the Business Expense Coverage and Extra Expense Coverage require Plaintiff to establish "direct physical loss of or damage to" the insured premises.  Similarly, the Civil Authority Coverage requires Plaintiff to establish that a civil authority barred access to Plaintiff's premises in response to direct physical loss or damage to other property located "not more than

---

[5] Plaintiff also cites a portion of the Policy that provides extended Business Income/Extra Expenses coverage under the Elite Property Enhancement.  (*See* Compl. ¶ 24.)  That coverage, however, only applies where the business property has been "damaged by a Covered Cause of Loss." (Policy, at 94-95 of 167.)  Thus, the Elite Property Enhancement coverage also requires "direct physical loss of or damage to" Plaintiff's property.  Further, the coverage extensions are still subject to all provisions, and necessarily all exclusions, within the Policy.  (Policy, at 95 of 167.)

one mile from" Plaintiff's business.  (*Id.* at 68 of 167.)  So, in all cases, direct *physical* loss of or damage to property is a prerequisite to coverage.

All of the above coverages are also subject to a Virus Exclusion that excludes coverage for any "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."  (Policy at 78 of 167.)  The Policy also includes a conspicuous notice highlighting the significance of the Virus Exclusion and encouraged Plaintiff to read all the Policy endorsements carefully.  (*Id.* at 15 of 167.)

Against that backdrop, Plaintiff alleges that COVID-19 has spread rapidly throughout the country and has been declared a pandemic by the World Health Organization. (Complaint  ¶ 26.)  Although Plaintiff does not allege any actual contamination or illness at its business premises, Plaintiff alleges that the Governor of Pennsylvania and other public officials ordered closure of all non-essential or non-life-sustaining businesses in an effort to limit the spread of the disease, in part because "the contact and interaction necessarily incident to such businesses causes a heightened risk of the property being contaminated."  (Complaint ¶ 32.)  Plaintiff claims that in response to the Pennsylvania Governor's orders, Plaintiff closed its business on March 15, 2020 and gave notice of its claim to PIIC on March 31, 2020.  *Id. at* 37.

PIIC denied Plaintiff's claim in a letter dated April 16, 2020. The letter, which is appended to the Complaint as Exhibit B, provided a detailed explanation for the denial.  (Compl., Exhibit B.)  Among other things, the letter stated that the Policy specifically excluded any loss resulting from viruses.  (Compl, Ex. B, p.5.)  The letter also noted that Plaintiff had indicated that "there were no reports of illness by you, your employees or others at your location(s) and there have been no reports of physical damage to your property(ies); nor was there any damage off premises, which

7

triggered your business closing."  (Compl. ¶ 40, Exhibit B, p. 1.)  The letter further requested that

Plaintiff contact PIIC if Plaintiff disagreed with the coverage determination.  *Id.*

Plaintiff did not notify PIIC of any disagreement or bring any additional facts to PIIC's

attention.  Instead, Plaintiff filed this class action seeking a declaratory judgment (Count I) that it

is entitled to coverage under the Policy for the interruption to Plaintiff's business and the associated

business income lost as a result of the Covid-19 pandemic and resulting emergency orders by state

and local authorities closing businesses to the public.  (Compl. ¶¶ 79, Prayer for Relief, p. 17.)

Plaintiff also seeks damages for breach of contract (Count II) as a result of PIIC's failure and

refusal to provide coverage.  (Compl. ¶¶ 30-34, 37, 81-87.)

## III.   LEGAL STANDARD

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain a "short

and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P.

8(a)(2).  Failure to plead sufficient facts to state a claim to relief that is "plausible on its face"

warrants dismissal.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v.

Twombly*, 550 U.S. 544, 570 (2007)).  It is a plaintiff's burden to show its "entitlement to relief"

with more than "labels and conclusions, and a formulaic recitation of the elements of a cause of

action."  *Twombly*, 550 U.S. at 555.

Although a Rule 12(b)(6) motion to dismiss accepts the Complaint's well-pleaded factual

allegations as true for purposes of the motion, the Court is not required to accept mere conclusions

or "bare assertions … amounting to nothing more than a 'formulaic recitation' of the elements" of

a claim. *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949, citing *Twombly*, 550 U.S. at 555, 127 S.Ct.

1955. "Nor does a complaint suffice if it tenders naked assertions devoid of further factual

enhancement."  *Iqbal*, 556 U.S. at 678.  Conclusory allegations are not entitled to the assumption

of truth and must be disregarded. *Ciser v. Nestle Waters N. Am. Inc.*, 596 F. App'x 157, 163 (3d

Cir. 2015); *Davis v. Family Court of Phila.*, No. CV 14-6840, 2015 WL 10937416, at *1, n.1 (E.D. Pa. Feb. 20, 2015).

Applying those standards here, and as more fully set forth below, Plaintiff's Class Action Complaint must be dismissed for failure to state a claim.

## IV. <u>ARGUMENT</u>

### A. <u>The Complaint Fails To Meet Rule 8's Pleading Requirements.</u>

Although Plaintiff seeks coverage under a policy of property insurance that requires a "direct physical loss of or damage to" insured premises, Plaintiff pleads no facts describing any physical change, alteration, or damage to the Covered Property.  Instead, the Complaint just repeatedly recites the naked phrase "direct physical loss" without explaining what that loss is or how either the pandemic or the governmental emergency orders that resulted could have (much less did) physically altered or damaged the Covered Property.  (Compl. ¶ 41) (asserting, again as a conclusion, that "Plaintiff's Covered Property suffered direct physical loss or damage due to the Governor of Pennsylvania's Order (and other local government orders) mandating that Plaintiff discontinue its primary use…."); *id.* at ¶¶ 42, 43 ("the COVID-19 pandemic and the ubiquitous nature of the COVID-19 virus caused a direct physical loss of or damage to Plaintiff's Covered Property"); *id.* at ¶¶ 43, 44 (asserting legal conclusion that  Plaintiff suffered "direct physical loss" and/or "a risk of direct physical loss" to its premises).   These threadbare conclusions are insufficient to state a claim. *See Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964-65 (dismissing claim where allegations merely tracked conspiracy requirement); *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949, citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 ("bare assertions, much like the pleading of conspiracy in *Twombly*, amount[ing] to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim" cannot withstand Rule 12(b)(6) motion to dismiss).

The *only* actual facts[6] set forth in the Complaint allege that Plaintiff was forced to suspend its operations as a result of the pandemic and governmental closure orders.  (Compl. ¶¶ 27, 30-34, 37, 41-44.)  That, however, is not "direct physical loss or damage" to property.  Accordingly, the Complaint sets forth no facts establishing "direct physical loss or damage" to the Covered Property necessary to trigger Business Income or Extra Expense Coverages.  And Plaintiff pleads no facts establishing the government orders were in response to any physical loss of or damage to other property, which is prerequisite to any Civil Authority Coverage.  *See Source Food Tech*, 465 F.3d at 837–38 (8th Cir. 2006) (insured did not suffer "direct physical loss" where government prohibited access to its property, reasoning that although plaintiff lost access to property, the property was not damaged in any way).  So, no facts are pleaded that would establish a plausible claim for relief under the Policy as required under Rule 8.  *Twombly* and *Iqbal* therefore control and the Complaint must be dismissed.

**B.**    **The Complaint Otherwise Fails To State A Claim Under The Plain Terms Of The Policy And Must Be Dismissed Pursuant To Rule 12(b)(6).**

Quite apart from the Complaint's Rule 8 deficiencies, the Complaint otherwise fails to state a claim on which relief can be granted and must be dismissed under Rule 12(b)(6).

**1.**    **The Virus Exclusion Applies.**

As an initial matter, the Policy contains a clear and unequivocal Virus Exclusion excluding any "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."  (Policy at 78 of 167.)  The Policy also includes a notice highlighting the significance of the Virus Exclusion and encouraging

---

[6] A fact is "[s]omething that actually exists" or "[a]n actual or alleged event or circumstance, as distinguished from its legal effect, consequence, or interpretation."  *Black's Law Dictionary* (10th ed. 2014).

Plaintiff to read all the Policy endorsements carefully.  (*Id.* at 15 of 167.)  To the extent Plaintiff

has alleged any facts regarding its alleged loss, that loss clearly results from a "virus . . . that

induces or is capable of inducing physical distress, illness or disease."  (*Id.* at 78 of 167.)  Thus,

on its face, the Virus Exclusion bars Plaintiff's claim for declaratory judgment.

a.   <u>Plaintiff's Conclusory Allegation That The Virus Exclusion "Does
Not Apply" To Plaintiff's Loss Cannot Be Considered.</u>

Notwithstanding the clear and unambiguous language of the Virus Exclusion, Plaintiff

baldly alleges that it somehow does not apply.  (Compl. ¶¶ 46, 47.)  That conclusory legal assertion

lacks any factual support and is contradicted by the plain terms of the Policy and the unambiguous

language of the exclusion.  Thus, the Court cannot consider it in ruling on a motion to dismiss.

*See Bell v. Rothrock*, No. 4:18-CV-02177, 2020 WL 1288484, at *3 (M.D. Pa. Jan. 30, 2020),

report and recommendation adopted, No. 4:18-CV-02177, 2020 WL 1244595 (M.D. Pa. Mar. 16,

2020) ("Nor is [the Court] required to credit factual allegations contradicted by indisputably

authentic documents on which the complaint relies"); *Iqbal, supra,* 556 U.S. at 678, 129 S.Ct. at

1949.  Accordingly, and even taking the well pleaded facts of the Complaint as true, Plaintiff's

claim is barred by the Virus Exclusion and must be dismissed under Rule 12(b)(6).

b.   <u>Regulatory Estoppel Does Not Bar Application Of The Virus
Exclusion.</u>

Plaintiff also asserts that the Virus Exclusion is unenforceable under the doctrine of

regulatory estoppel.  The allegations in the Complaint, however, belie that assertion.

The essence of regulatory estoppel is a change in a party's legal position that is inconsistent

with the position previously taken in front of a regulatory body:

> In essence, the [regulatory estoppel] doctrine prohibits parties from
> switching legal positions to suit their own ends. Thus, having represented
> to the insurance department, a regulatory agency, that the new language
> in the policies . . . did not involve a significant decrease in coverage from

11

> the prior language, the insurance industry will not be heard to assert the
> opposite position when claims are made by the insured policyholders.

*Sunbeam Corp. v. Liberty Mut. Ins. Co.*, 566 Pa. 494, 500, 781 A.2d 1189, 1192 (2001).  To

establish regulatory estoppel, Plaintiff must show that a party: (1) made a statement to a regulatory

agency; (2) the regulatory agency relied upon the statement when deciding the issue presented to

it; and (3) the party subsequently adopted a litigation position opposite to the one it presented to

the regulatory agency.  *Simon Wrecking Co., Inc. v. AIU Ins. Co.*, 530 F. Supp. 2d 706, 714 (E.D.

Pa. 2008) (citing *Sunbeam Corp.*, 781 A.2d at 1189); *Hussey Copper Ltd. v. Royal Ins. Agency of

Am.*, No. 07-758, 2009 WL 2913959, at *1 (E.D. Pa. Sept. 9, 2009).  Specifically, Plaintiff must

show that PIIC took a position that "*directly contradict[s]*" the position it takes now.  *Takeda

Pharm. U.S.A., Inc. v. Spireas*, 400 F. Supp. 3d 185, 207 (E.D. Pa. 2019) (emphasis added).  "An

industry that makes representations to a regulatory agency to win agency approval will not be

heard to assert the opposite position when claims are made by [litigants such as] insured

policyholders."  *Hussey Copper, Ltd. v. Arrowood Indem. Co.*, 391 F. App'x 207, 211 (3d Cir.

2010); *Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*, 89 F.3d 976, 992 (3d Cir. 1996)

(regulatory estoppel applied where insurer sought to give language different meaning than the

meaning previously proffered to regulators).

There is no allegation that PIIC itself made any representations to the Department of

Insurance regarding the effect of the Virus Exclusion.  Plaintiff apparently assumes that PIIC can

be estopped as a result of ISO's representations to regulators because PIIC utilizes the ISO form

virus exclusion.[7]   This Court need not address whether regulatory estoppel can be applied

---

[7] ISO is the Insurance Services Office, Inc.  According to the Complaint, ISO and the American
Association of Insurance Services ("AAIS") represented hundreds of insurance carriers in seeking
approval from State insurance regulators for the adoption of the Virus Exclusion. (Complaint ¶
49.)  PIIC's Policy utilizes the ISO Virus Exclusion Form.  (Policy at 78 of 167.)

vicariously, however, because the Complaint itself demonstrates that PIIC's position here is *entirely* consistent with ISO's regulatory submissions and that the doctrine of regulatory estoppel does not apply in any event.

Plaintiffs' Complaint cites to and relies upon an ISO Circular[8] published in 2006 that includes the 2006 ISO regulatory filing for approval of the Virus Exclusion. ISO's position in that filing is *identical* to the coverage position PIIC takes here. Specifically, the ISO Regulatory filing states:

> While property policies have not been a source of recovery for losses involving contamination by disease-causing agents, the specter of pandemic or hitherto unorthodox transmission of infectious material raises the concern that insurers employing such policies may face claims in which there are efforts to expand coverage and to create sources of recovery for such losses, contrary to policy intent.
>
> In light of these concerns, we are presenting an exclusion relating to contamination by disease-causing viruses or bacteria or other disease-causing microorganisms.
>
> ****
>
> ***The amendatory endorsement presented in this filing states that there is no coverage for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease. The exclusion (which is set forth in Paragraph B of the endorsement) applies to property damage, time element and all other coverages***; introductory Paragraph A prominently makes that point. Paragraphs C and D serve to avoid overlap with other exclusions, and Paragraph E emphasizes that other policy exclusions may still apply.

---

[8] The ISO Circular is referenced in and quoted in Plaintiffs' Complaint. (*See* Compl. ¶ 49-53) In deciding a motion to dismiss, "the Court may consider . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Bell v. Rothrock*, No. 4:18-CV-02177, 2020 WL 1288484, at *3 (M.D. Pa. Jan. 30, 2020), report and recommendation adopted, No. 4:18-CV-02177, 2020 WL 1244595 (M.D. Pa. Mar. 16, 2020). Here, the Complaint incorporates ISO's submission to Pennsylvania regulators and relies on that submission to support Plaintiff's estoppel claim. The Court may thus consider the written submission when deciding this Motion. *Id.*

(ISO Circular, attached hereto as Exhibit 1 (emphasis added).)

Thus, ISO fully disclosed that in the event of a pandemic or similar event, insureds might attempt to expand coverage under existing policies, and that the Virus Exclusion was being proffered to make clear that there was no coverage for virus-related losses.  That position is on all fours with PIIC's position here.  Specifically, PIIC's coverage denial was based on the Virus Exclusion, and was also based on the fact that the virus did not cause "direct physical loss or damage" to any insured or nearby structure.  (Compl., Exhibit B, p. 5.)  So, even taking the facts pleaded in Plaintiff's Complaint as true, PIIC's position with respect to coverage under the Policy is identical to the position ISO took when it submitted the Virus Endorsement for approval.

Plaintiff nevertheless points to a snippet in ISO's submission stating that "property policies have not been a source of recovery for losses involving contamination by disease-causing agents." (Compl. ¶ 53.)   Plaintiff claims this representation was "false."[9]   Id.   But Plaintiff cites no

---

[9] Although Plaintiff focuses on a single sentence of the ISO submission, the Complaint does not claim that the submission read as a whole was in any way misleading.  For example, Plaintiff's Complaint fails to mention that the submission also contains the following statements:

> Disease-causing agents may render a product impure (change its quality or substance), or enable the spread of disease by their presence on interior building surfaces or the surfaces of personal property. When disease-causing viral or bacterial contamination occurs, potential claims involve the cost of replacement of property (for example, the milk), cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses.

> ****

> Although building and personal property could arguably become contaminated (often temporarily) by such viruses and bacteria, the nature of the property itself would have a bearing on whether there is actual property damage. An allegation of property damage may be a point of disagreement in a particular case.

(ISO Circular, attached hereto as Exhibit 1.)  So, read as a whole, the ISO submission plainly disclosed that virus-related claims could arguably be made under then-existing policies and that whether viral contamination could in some circumstances constitute actual property damage "may

controlling authority establishing otherwise, nor has PIIC been able to find any body of then-applicable case law or regulatory authority holding that property insurance generally covers business losses arising out of viral outbreaks or pandemics.[10]

Even if ISO's statement about sources of recovery was arguably incorrect – and it was not – there still would be no regulatory estoppel.  To invoke regulatory estoppel, Plaintiff must show that PIIC is taking a legal position *contrary* to the position previously taken before the regulatory body.  *Simon Wrecking Co., Inc., supra,* 530 F. Supp. 2d at 706.  Plaintiff has identified no inconsistency – and has certainly alleged no "direct contradict[ion]" – between ISO's prior regulatory statements and PIIC's coverage position here.  Regulatory estoppel therefore does not apply. *See Takeda Pharm.*, 400 F. Supp. 3d at 207; *see also Hussey Copper, Ltd. v. Arrowood Indem. Co*., 391 F. App'x 207, 211 (3d Cir. 2010) (rejecting regulatory estoppel argument and reasoning that "ISO's statements were not so contrary to [defendant's] position that [defendant ] should be estopped from invoking the pollution exclusion here.").

Finally, even where otherwise applicable, regulatory estoppel does not void clear and unambiguous policy provisions or provide a basis for rescission.  It simply prevents a party from asserting a position in litigation contrary to that previously asserted before the regulatory agency. *Simon Wrecking Co., Inc., supra,* 530 F.Supp.2d at 711.  Since the Complaint identifies no position

---

be a point of disagreement in a particular case." There is nothing even arguably misleading about that, and the exclusion was proffered expressly for the purpose of eliminating any doubt. *Id.*

[10] On the contrary, the law as of submission of the virus exclusion appears to support the ISO statement.  Although it did not arise in the context of a pandemic , the Third Circuit in considering a similar claim involving asbestos contamination held that "[i]n ordinary parlance and widely accepted definition, physical damage to property means 'a distinct, demonstrable, and physical alteration' of its structure." *Port Authority of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 235 (3d Cir. 2002) (citing 10 Couch on Insurance § 148:46 (3d ed.1998)).  That decision was issued in 2002, just four years before ISO submitted the virus exclusion for approval.

currently being taken by PIIC that is in any way contrary the positions asserted in the ISO submission, there is nothing to "estop."

>       c.       Public Policy Does Not Bar Application Of The Virus Exclusion.

Finally, Plaintiff conclusorily states that the Virus Exclusion is not enforceable as a matter of "public policy."  Compl. ¶ 48.  The Complaint contains no facts establishing that the Virus Exclusion violates public policy and cites no authority suggesting that the exclusion runs afoul of any legislatively or judicially established policy of Pennsylvania, or any other jurisdiction. Plaintiff cannot simply contrive some previously unheard of "policy" out of whole cloth simply because they do not like the exclusion's effect, nor can they invalidate the plain terms of the Policy with bald legal conclusions.  *See Rothrock*, 2020 WL 1288484, at *3 (Court is not "required to credit factual allegations contradicted by indisputably authentic documents on which the complaint relies").

>   **2.       The Complaint Fails To Assert *Facts* Establishing A "Direct Physical Loss."**

Even if the Virus Exclusion were absent, the Complaint still fails as a matter of law because Plaintiff has not pled facts showing "direct physical loss or damage" to Plaintiff's property which is prerequisite to Business Income or Extra Expense coverage under the Policy.

Specifically, the Business Income Coverage provides that PIIC "will pay for the actual loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration'. *The 'suspension' must be caused by direct physical loss of or damage to property* at premises which are described in the Declarations and for which a Business Income

Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss."  (Policy at 67 of 167, emphasis added.)[11]

Similarly, the Extra Expense Coverage states that "Extra Expense means necessary expenses you incur during the 'period of restoration' that you would not have incurred if there had been no *direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss*."  (*Id.* (emphasis added)).   Thus, to establish coverage under the Business Income or Extra Expenses Coverage, Plaintiff must plead *facts* showing it suffered a "direct physical loss."

To establish "physical damage" to property Plaintiff must show "a distinct, demonstrable, and physical alteration of its structure."  *Port Auth. of New York & New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 235 (3d Cir. 2002) ("The mere presence of asbestos, or the general threat of future damage from that presence, lacks the distinct and demonstrable character necessary for first-party insurance coverage"); "Physical" loss or damage, 10A Couch on Ins. § 148:46 ("The requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.").  Moreover, "[p]hysical damage to a building as an entity by sources unnoticeable to the naked eye must meet a higher threshold." *Id.* The presence of a source "unnoticeable to the naked eye" – such as asbestos

---

[11] To the extent Plaintiff also seeks a declaration that it is entitled to coverage under the extended Business Income/Expenses coverage pursuant to the Elite Property Enhancement, *see* Complaint, at ¶ 24, that coverage only applies where the business property has been "damaged by a Covered Cause of Loss."  (Policy, at 94-95 of 167.)   Thus, the Elite Property Enhancement coverage also requires "direct physical loss of or damage to" Plaintiff's property.  Plaintiff has not pled facts that would, if true, establish any such loss.

or, as here, the Coronavirus – can only satisfy the definition of physical damage "[w]hen the presence of large quantities" "make the structure uninhabitable and unusable." *Id.*

As discussed above, however, the Complaint is devoid of any well pleaded facts establishing any physical loss or damage to Plaintiff's property.  Beyond Plaintiff's "threadbare assertions" of "physical loss of or damage to" property, the Complaint provides no description or details of the claimed "physical loss" or explain how the virus in any way caused a "demonstrable, physical alteration" at Plaintiff's property.  *See Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964-65 (dismissing claim where allegations merely tracked conspiracy requirement); *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949, citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 ("bare assertions … amount[ing] to nothing more than a 'formulaic recitation of the elements'" of a claim do not withstand Rule 12(b)(6) motion to dismiss). Accordingly, even taking the well pleaded facts of Plaintiff's complaint as true, it fails to state a claim.

      3.      **The Civil Authority Coverage Does Not Apply Because Plaintiff Has Not Alleged Any Facts Related To That Coverage.**

Mirroring similar requirements found in the Business Income and Extra Expense Coverage, the Civil Authority provision provides that:

> When a Covered Cause of Loss causes *damage to property other than property at the described premises*, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, *and the described premises are within that area but are not more than one mile from the damaged property*; and
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(Policy at 68 of 167, emphasis added.)

Accordingly, to establish coverage, Plaintiff must show "distinct, demonstrable, physical alteration" of property other that its own, resulting in an order from civil authority prohibiting access to the insured premises. *See Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 685 (5th Cir. 2011) (interpreting an almost identical coverage provision and holding that "the action of civil authority prohibiting access to the described premises must be caused by direct physical loss of or damage to property other than at the described premises; and [] the loss or damage to property other than the described premises must be caused by or result from a covered cause of loss as set forth in the policy.").

Here, however, Plaintiff has not alleged--even in conclusory fashion--any damage to property other than Plaintiff's.  *See id.* (insured must show damage to property other than Plaintiff's property).  Nor has Plaintiff alleged, even in conclusory fashion, that "access to the area immediately surrounding the damaged property [was] prohibited by civil authority as a result of the damage." *Id.*  Finally, Plaintiff has not alleged, even in conclusory fashion, that its property was "within the area [to which access has been prohibited] but not more than one mile from the damaged property," or that "the action of civil authority [was] taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage . . ."  *Id.*  Plaintiff must allege *facts* establishing all of these elements to be entitled to Civil Authority Coverage. *See Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65.  It has not done so and thus the Complaint fails to state a claim.

To the extent Plaintiff relies on the single factual allegation discussed above--that state and local orders prohibited access to its business--that allegation does not entitle Plaintiff to Civil Authority Coverage.  None of the orders upon which Plaintiff relies were issued in response to

dangerous conditions caused by actual physical damage to specific property that is "not more than one mile from" Plaintiff's daycare center. (Policy at 68 of 167.) Thus, even if the few facts alleged in the Complaint were true, Plaintiff would not be entitled to Civil Authority Coverage. For that independent reason, the Complaint fails to state a claim for relief.

### 4.    <u>Plaintiff Is Not Entitled To A Declaratory Judgment</u>

#### a.    <u>Plaintiff Has Not Alleged Any Likelihood Of Future Loss And Cannot Maintain A Declaratory Judgment To Determine Liability For A Prior Loss.</u>

As discussed above, Plaintiff conclusorily alleges that it has suffered an unidentified "direct physical loss" caused by the pandemic and certain government orders. Even if these allegations were supported by sufficient facts (they are not) Plaintiff would not be entitled to the declaratory judgment sought in Count I of the Complaint. "Declaratory judgment is inappropriate solely to adjudicate past conduct." *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006). It is not "meant simply to proclaim that one party is liable to another." *Id.*; *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct"); *Hawkins v. Supreme Court of N.J.*, 174 F. App'x 683, 685 (3d Cir. 2006) (Plaintiff was not entitled to declaratory relief for claims based on past conduct).

Here, Plaintiff alleges that it suffered unspecified loss or losses as a result of prior government shutdown order. *See e.g.,* (Compl. ¶ 41 (alleging Plaintiff "*suffered* 'direct physical loss or damage' due to the Governor of Pennsylvania's Order (and other local governmental orders)); ¶ 42 (alternatively alleging that COVID-19 in general "*caused* a direct physical loss of or damage to Plaintiff's Covered Property.") (emphasis added).) These orders were issued in the past. *See id.*; *see also id.* ¶ 30 (alleging order closing Plaintiff's business issued on March 19, 2020). And for that reason, Plaintiff seeks to recover damages (via its breach of contract claim)

that it has allegedly *already* suffered.  *See id.* ¶ 84 (alleging Plaintiff "suffered a covered loss under the Policy.")  Plaintiff does not allege, even in conclusory fashion, that it is likely to suffer any similar injury in the future.  Instead, Plaintiff simply seeks a declaration proclaiming liability as a result of these prior orders.  *Andela*, 569 F. App'x at 83 ("Declaratory judgments are not meant simply to proclaim that one party is liable to another."); *see also* (Compl. ¶¶ 72-74 (alleging that Plaintiff has suffered a loss and seeking declaration that the loss is covered).)  To the extent Plaintiff has suffered any injury, Plaintiffs' remedy lies in its claim for breach of contract set forth in Count II.  Plaintiff is not entitled to a separate declaratory judgment that PIIC is liable for the alleged damages it seeks to recover in Plaintiff's breach of contract claim.  *Id*.  For that reason, Count I should be dismissed.

> b.  Plaintiff's Declaratory Judgment Claim Would Not Resolve The Dispute Between The Parties And Thus Seeks An Advisory Opinion.

Independently, and unlike Plaintiff's claim for breach of contract in Count II, Plaintiff's declaratory judgment claim would not resolve the entire dispute between the parties.  It thus seeks nothing more than an advisory opinion as to liability.  The Declaratory Judgment Act "prevent[s] federal-court litigants from seeking by declaratory judgment to litigate a single issue in a dispute that must await another lawsuit for complete resolution." *Calderon v. Ashmus*, 523 U.S. 740, 748 (1998); *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 246, 73 S. Ct. 236, 241, 97 L. Ed. 291 (1952) (One cannot bring a declaratory-judgment action just to resolve one isolated issue in a possible future controversy).

Here, Plaintiff seeks a declaration that there is coverage under the Policy for the interruption to its business and the associated lost business income.  (Compl. ¶¶ 79, Prayer for Relief, p. 17.)  But that declaration would not resolve the entire dispute between the parties.  Instead, it would merely address the liability portion of Plaintiff's breach of contract claim,

bifurcating that claim into liability and damages portions.  Plaintiff cannot use the Declaratory Judgment Act to split its claim into liability and damages actions, or to "to gain a litigation advantage by obtaining an advance ruling on an affirmative defense." *Calderon*, 523 U.S. at 748 (federal law "prevent[s] federal-court litigants from seeking by declaratory judgment to litigate a single issue in a dispute that must await another lawsuit for complete resolution."); *see also Butta v. GEICO Cas. Co.*, 400 F. Supp. 3d 225, 235 (E.D. Pa. 2019) (rejecting declaratory judgment seeking declaration of coverage under insurance policy as duplicative of breach of contract action for breach of same policy).  For that independent reason, Count I of the Complaint should be dismissed.

## V.    <u>CONCLUSION</u>

For all the reasons set forth above, the Complaint should be dismissed in its entirety.

Respectfully,

*/s/ Jeffrey D. Grossman*

Jeffrey D. Grossman
Stradley Ronon Stevens & Young LLP
2600 One Commerce Square
Philadelphia, PA 19103
Telephone:  215.564.8000
Facsimile:  215.564-8120

Richard L. Fenton (admitted *pro hac vice*)
Dentons US LLP
233 S. Wacker Drive, Suite 5900
Chicago, IL  60606
Telephone:  312.876.8000
Facsimile:  312.876.7934

Jeffrey A. Zachman (admitted *pro hac vice*)
Dentons US LLP
303 Peachtree St., NE Suite 5300
Atlanta, GA  30308
Telephone:  404.527.4000
Facsimile:  404.527.4198

*Attorneys for Defendant,*
*Philadelphia Indemnity Insurance Company*

Dated:  June 11, 2020

4589117